## CINCINNATI GAS AND ELECTRIC COMPANY et al., Plaintiffs-Appellants,

### v.

## WESTINGHOUSE ELECTRIC CORPORATION, Defendant-Appellee.

### No. 72–1103.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 1972.

Archibald J. Allen, Cincinnati, Ohio, for plaintiffs-appellants; James R. Poston, Joan T. Schneider, Cincinnati, Ohio,

Julian de Bruyn Kops, Dayton, Ohio, William G. Porter, Jr., Porter, Stanley, Treffinger & Platt, Columbus, Ohio, on brief.

John W. Beatty, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant-appellee; Powell McHenry, David S. Mann, Cincinnati, Ohio, on brief.

Before PECK and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

The appellants, Cincinnati Gas and Electric Company, Columbus and Southern Ohio Electric Company, and Dayton Power and Light Company (the utilities), brought this action in the United States District Court for the Southern District of Ohio against Oberle-Jordre Company, Inc. and the appellee, Westinghouse Electric Corporation. Federal court jurisdiction is based on diversity of citizenship. After a preliminary hearing the district court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granted Westinghouse a summary judgment.

The appellants in order to construct a unit for the generation of electric power entered into a number of contracts. One contract was with Westinghouse for the construction of components of the generating unit. Another of the contracts was with Oberle-Jordre for the erection of the components into a generating unit. The Westinghouse contract provided, in addition to supplying the components, that it was to provide "competent erecting supervisor(s) who shall supervise and be responsible for the . . . erection of the equipment . . . ."

One of the components provided by Westinghouse was a three-way valve. The purpose of this valve was to divert oil flow from one oil cooler to another.

The coolers provide a method of cooling the oil that lubricates the turbine bearings. On October 4, 1968, during start-up procedures, this valve was turned ostensibly to divert the oil flow from one cooler to another. The flow of oil, however, was completely blocked and consequently the turbine's bearings were severely damaged.

The complaint alleges that on April 18–19, 1968, an Oberle-Jordre crew disassembled the three-way valve and then reassembled it improperly. The complaint further alleges that Westinghouse was negligent in failing properly to inspect and supervise the disassembly and reassembly of the valve. The utilities' claim against both defendants is for damages in excess of 10 million.

Westinghouse in its answer relied upon several defenses, only one of which is relevant here. This defense is based on Section (11) of the contract between the utilities and Westinghouse:

(11) Contractor warrants that the recommendations of the Field Engineers shall accurately reflect the best judgment of a qualified engineer on the premises but no other warranty or obligation of any kind shall extend thereto or be implied therefrom and Contractor shall not be liable for any act or omission of those not its employees nor for any injury, loss, damage, delay, failure to operate, or other thing whatsoever due in whole or in part to any cause other than the failure of its engineering recommendations to fulfill such warranty. The liability of Contractor with respect, to the Field Engineer's services shall not, in any event, exceed the cost of correcting defects in the apparatus, and Contractor shall not be liable for consequential damages.

Westinghouse claims that this provision not only limits its liability to the cost of repairing the apparatus but also exonerates it from liability altogether.[1]

---

1. The utilities set out three types of damages in their complaint: (a) cost of repair, (b) loss of rents, and (c) loss of revenues. The district court found types

After filing its answer Westinghouse moved for a summary judgment under Rule 56, also based on Section (11) of the contract, on the ground that there was no genuine issue of material fact and that Westinghouse was entitled to judgment as a matter of law. After a preliminary hearing, the district court granted Westinghouse's motion.

The district court held that Section (11) of the contract clearly and unambiguously absolved Westinghouse from all liability where Westinghouse's negligence was not the sole cause of an accident. Thus, as here, where the accident is alleged to have been due to the combined acts of negligence of Oberle-Jordre and Westinghouse, Section (11) exculpated Westinghouse completely. Accordingly judgment was entered dismissing the action as to Westinghouse. For purposes of the present appeal the district court certified that there was no just cause for delay. In so ruling the district court emphasized that portion of the contract which provided that Westinghouse should not be liable "for any injury . . . due . . . in whole or in part to any cause other than the failure of its engineering recommendations to fulfill such warranty . . .," and that it should not be liable "for any act or omission of those not its employees." Since the injury was due at least in part to a cause other than a failure of Westinghouse's warranty (Oberle-Jordre's negligence), Westinghouse was held to have no liability to the utilities. We think that the district court misapprehended the provisions of the contract and erred in granting Westinghouse's motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to a summary judgment upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." While we agree with the district court that there is no genuine issue of material fact [2] we disagree that Westinghouse is entitled to a judgment as a matter of law. See 6 Moore's Federal Practice ¶ 56.04[1].

■ In cases involving the interpretation of contract language extensive examination of precedent is of little value since the controlling rhetoric will vary from case to case. Yet since this is a diversity case we must look for guidance to the applicable Ohio precedents. An examination of the Ohio authorities makes it clear to us that while contracts seeking to relieve a party from the consequences of his own negligence or breach of duty are strictly construed, general rules of contract construction are not invoked where the contract is clear and unambiguous. See George H. Dingledy Lumber Co. v. Erie R. R., 102 Ohio St. 236, 131 N.E. 723 (1921); Kay v. Pennsylvania R. Co., 156 Ohio St. 503, 103 N.E.2d 751 (1952); Dayton Fabricated Steel Co. v. Dayton Town and Country, Inc., 99 Ohio App. 309, 133 N. E.2d 423 (1954); General Accident Fire and Life Assurance Corp. v. Smith and Oby Co., 272 F.2d 581 (6th Cir. 1959).

■ As we are of the opinion that the contract in unambiguous terms does not exonerate Westinghouse from liability for its breach of warranty of proper supervision, it is unnecessary, in keeping with the Ohio decisions, to invoke general rules of contract interpretation. Since Westinghouse relies upon Section (11) of the contract to exonerate it from liability altogether, we first turn to an analysis of that provision. A close scru-

---

(b) and (c) to be consequential as to Westinghouse and excluded by the contract. Westinghouse's potential liability was thus reduced by the district court to about $325,000.

2. For the purposes of this appeal the facts as stated in the complaint are treated as true, including the existence, execution and actual language of the contract. Since neither party sought to introduce matters de hors the contract, the motion for summary judgment does not differ materially from a motion for a judgment on the pleadings allowed by Rule 12(c). See 6 Moore's Federal Practice ¶ 56.09.

tiny of the section discloses that the first sentence may be divided into four discrete parts.[3]

1: The first part of the sentence contains an express warranty of proper supervision on the part of Westinghouse. ("Contractor warrants that the recommendations of the Field Engineers shall accurately reflect the best judgment of a qualified engineer on the premises . . . .")

2: The second part of the same sentence makes it clear that no other or further warranty of any kind is undertaken. ("but no other warranty or obligation of any kind shall extend thereto or be implied therefrom . . . .")

3: The third part clearly asserts that Westinghouse shall not be responsible for the acts or omissions of others. ("Contractor shall not be liable for any act or omission of those not its employees . . . .")

4: The fourth part spells out in express terms that Westinghouse shall not be liable for any loss resulting from any cause other than its own breach of warranty. (Contractor shall not be liable "for any injury, loss, damage, delay, failure to operate, or other thing whatsoever due in whole or in part to any cause *other than the failure of its engineering recommendations to fulfill such warranty*.")

Part No. 1 is a clear and unmistakable warranty of competent supervision on the part of Westinghouse, a provision which is in keeping with numerous other provisions of the contract, as we shall point out later. Part No. 2 is simply an assurance that Westinghouse's obligation shall not extend beyond the warranty of proper supervision.

Part No. 3 merely makes it clear that Westinghouse shall not be liable for acts or omissions of those not its employees. In this case it is significant that the complaint does not seek to hold Westinghouse liable for any negligent acts on the part of Oberle-Jordre, but merely for its own alleged breach of warranty, although the claim for damages is against one or both parties defendant as the facts may appear.

Part No. 4, relied upon by the district court and by the appellee to justify the exoneration of Westinghouse, has no such effect in our view. On the contrary, when carefully read, that particular portion of the sentence re-emphasizes the fact that Westinghouse shall be liable for any breach of its express warranty of proper supervision. It makes abundantly clear that while Westinghouse shall not be liable for any loss due in whole or in part to other causes, it shall nevertheless be liable for "the failure of its engineering recommendations to fulfill such warranty."

It will thus be seen that while Section (11) is unambiguous in absolving Westinghouse from liability for other causes or for the acts of negligence of others, in equally unambiguous terms it asserts and reaffirms that Westinghouse shall be liable for its failure to comply with its warranty of competent supervision. Contrary to Westinghouse's argument on appeal, there are no words in Section (11) which may be fairly construed to limit its liability to cases where its negligence or breach of warranty is the sole cause of injury, nor to exonerate it in the event its breach of warranty should happen to coincide with some negligent act on the part of others.

To construe the contract, as urged by Westinghouse, would require us to ignore not only the express language of Section (11) but to brush aside numerous other provisions of the contract whereby without equivocation Westinghouse undertook to provide competent engineering supervision. For example under paragraph "B" Westinghouse

---

3. The second and last sentence of Section (11) purports to limit Westinghouse's liability in any event to the cost of "correcting defects in the apparatus." As appellants have not challenged the correctness of the district court's finding limiting Westinghouse's liability to the cost of correcting defects, we express no view with respect to such finding in this opinion.

agreed to "furnish competent supervision for the unloading and *erection* of the equipment . . . ." (Emphasis supplied)

Paragraph "C" provides:

Contractor shall furnish the services of competent start-up engineer(s) to supervise and be responsible for directing Purchaser's personnel in the start-up and placing of the equipment in successful service.

By paragraph "D" it is further provided:

The field personnel provided by Contractor shall be capable, qualified, and able to perform the duties required to the satisfaction of the Purchasers and shall be vested with authority to make decisions binding on the Contractor.

In implementation of these express provisions, it is provided in paragraph "E" as follows:

Contractor shall furnish whatever office and office equipment is required by his erection superintendents and whatever storage facilities are required for special erection tools. Purchasers will furnish ground area only for such purposes.

Indeed it is difficult to conceive of a circumstance in which a breach by Westinghouse of its supervisory warranty would not be accompanied by some act of negligence or omission on the part of the contractor undertaking to erect or install the unit. On the other hand, it is conceivable that Westinghouse could fully comply with its warranty to furnish competent engineering supervision and that injury or damage could still occur because of some negligence on the part of Oberle-Jordre in its installation. In our view Section (11), in addition to re-emphasizing Westinghouse's liability for a breach of its warranty of supervision, had as its purpose to make clear that it would not be liable where it fully complied with its warranty and an injury or loss nevertheless occurred "in whole or in part" because of some negligent act or omission on the part of others. On the theory advanced by Westinghouse it would be extending a warranty in one breath and retracting it in the next. This result, we believe, is not only inconsistent with the Ohio authorities but also with the intention of the parties as expressed in the contract.[4]

The judgment of the district court is reversed insofar as it relieves Westinghouse of liability altogether and the action is remanded to that court for further proceedings not inconsistent with this opinion.

---

4. Westinghouse in its brief asserts that any interpretation of the contract other than to exonerate Westinghouse is "so bizarre as to be almost incomprehensible," and further that it is "unable to follow the path of convoluted logic" that leads to this conclusion. Such statements do nothing to enlighten the court in construing the contract provision in question.