ROYAL INDEMNITY COMPANY ET AL., APPELLANTS, *v.* BAKER PROTECTIVE SERVICES, INC. ET AL., APPELLEES.

(No. CA 9588 — Decided June 9, 1986.)

*Gordon D. Arnold* and *Jane M. Lynch,* for appellant Royal Indemnity Co.

*Charles W. Deuser II,* for appellant Metropolitan Co.

*Lawrence T. Burick,* for appellees.

WILSON, J. Plaintiff Metropolitan Company ("Metropolitan") operates retail clothing stores in the Dayton area. Plaintiffs Royal Indemnity Company and Admiral Insurance Company insured Metropolitan against burglary losses at the Metropolitan downtown store.

On January 13, 1981, Metropolitan entered into a renewal burglary alarm contract with Wells Fargo Alarm Services, Inc. ("Wells Fargo"), predecessor of defendant Baker Protective Services, Inc. and a subsidiary of defendant Baker Industries, Inc.

On May 22 or May 23, 1982, a burglary and theft of merchandise occurred at the Metropolitan downtown store. The burglary failed to register on the defendants' burglar alarm system.

· On May 12, 1983, plaintiffs filed suit seeking $150,330 from the defendants for damages resulting from burglary losses. The complaint alleged that approximately one half of the total loss was incurred by Metropolitan's insurance carriers because of insurance claims paid and subrogation.

The burglar alarm contract provided for a service fee of $648.16 per annum for a central station burglar alarm system and to "maintain such system in good working order, with the understanding that such entire systems are and shall remain the personal property of Wells Fargo."

The plaintiffs alleged that the theft occurred because of the defendants' negligence, gross negligence, willful and wanton misconduct, fraud and breach of express and implied warranties.

The following paragraph appears in a conspicuous place in the defendants' form contract:

"D. It is understood that Wells Fargo is not an insurer, that insurance shall be obtained by Subscriber, if any is desired; that the sums payable hereunder to Wells Fargo by Subscriber are based upon the value of services offered and the scope of liability undertaken and such sums are not related to the value of property belonging to Subscriber or to others located on Subscriber's premises. Subscriber does not seek indemnity by this agreement from Wells Fargo against any damages or losses caused by hazards to Subscriber's property. Wells Fargo makes no warranty, expressed or implied, that the system it installs or the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which the systems and services are designed to detect. Subscriber agrees that Wells Fargo shall not be liable for any of Subscriber's losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by this contract or by negligent acts or omissions of Wells Fargo, its agents or employees. The Subscriber does hereby waive and release any rights of recovery against Wells Fargo that it may have hereunder. It is agreed that if Wells Fargo should be found liable for any losses or damages · attributable to a failure of systems or services in any respect, its liability shall be limited to a sum equal to ten percent of the annual charge hereunder, or $250.00, whichever is greater. The Subscriber may obtain a greater limitation of liability, if desired, by payment of an increased annual rate, which shall be negotiated between the Subscriber and Wells Fargo upon the request of the Subscriber in writing."

The defendants moved for summary judgment. The motion was supported by the affidavit of Ronald Hanarak, Wells Fargo branch manager, and the depositions of two Wells Fargo employees, Curtis Givins and Leroy F. Campbell.

Plaintiffs moved for summary judgment on the issue of liability. Their motion was supported by the deposition of Steven Gronski, a security officer employee of Metropolitan.

Plaintiffs have appealed from the order of the trial court sustaining the defendants' motion for summary judgment and overruling plaintiffs' motion by implication.

There are four assignments of error. The first is:

"The trial court erred by granting defendants' motion for summary judgment when the holding in *Samson Sales, Inc.* v. *Honeywell, Inc.*, 12 Ohio St. 3d 27 (1984) dictated a result favorable to plaintiffs-appellants in that defendants-appellees' exculpatory clause in its burglar alarm contract is unenforceable as a penalty."

The facts in *Samson Sales, Inc.* v. *Honeywell, Inc.* (1984), 12 Ohio St. 3d

27, 12 OBR 23, 465 N.E. 2d 392, are similar to the facts in the case at bar.

Samson Sales, Inc. operated a pawn shop protected by Honeywell's burglary alarm system. In Honeywell's form contract there was an inconspicuous exculpatory clause which provided that in the event of loss by reason of failure of performance of Honeywell's service or equipment, Honeywell's "liability, if any, shall be limited to the sum of Fifty Dollars ($50.00) as liquidated damages and not as a penalty and this liability shall be exclusive." *Id.* at 28, 12 OBR at 24, 465 N.E. 2d at 393.

The Ohio Supreme Court focused on the liquidated damages provision of this clause and stated that the only issue of any consequence in the appeal was whether the clause limiting liability to $50 was valid and enforceable. The court found the stated liquidated damages to be in fact a penalty and the clause to be invalid: "[T]he contract provision as a whole, fails to evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement. * * *" *Id.* at 29, 12 OBR at 25, 465 N.E. 2d at 394.

Ohio courts have upheld clauses limiting liability under other circumstances, *Richard A. Berjian, D.O., Inc.* v. *Ohio Bell Tel. Co.* (1978), 54 Ohio St. 2d 147, 8 O.O. 3d 149, 375 N.E. 2d 410, and placed the risk of loss flowing from ordinary negligence on the party not negligent, *Hine* v. *Dayton Speedway Corp.* (1969), 20 Ohio App. 2d 185, 49 O.O. 2d 249, 252 N.E. 2d 648. The *Hine* court noted that the clause in that case would not be enforced where the party benefitted by the clause was guilty of willful or wanton misconduct.

The first several sentences in paragraph "D" of the Wells Fargo contract contain broader provisions than in the exculpatory clause limiting liability in the *Samson* case. The trial court herein found that "the parties contracted for 'no liability' of Wells Fargo and the extraneous sentence concerning the limitation of liability is merely an expression of unwarranted fear that not all the magic words were used to express 'no liability.' It is the old 'belt and suspenders' malady of legal draftmanship."

While the terms of paragraph "D" are somewhat contradictory, we believe that the language used places the liability for a burglary loss in excess of $250 with Metropolitan, which hedged or spread part of the risk of loss by the purchase of burglary insurance.

Absent some overwhelming public policy such as the concept of unconscionability, which we do not have here, Ohio courts have held the concept of "freedom of contract" to be fundamental to our society. *Blount* v. *Smith* (1967), 12 Ohio St. 2d 41, 41 O.O. 2d 250, 231 N.E. 2d 301. "[P]arties to a contractual relationship should have complete freedom to fashion whatever relationship they so desire." *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 102, 23 OBR 260, 262, 491 N.E. 2d 1114, 1116. An important function of contract law is to enforce the parties' agreed-upon allocation of risk. See Kronman & Posner, The Economics of Contract Law (1979). The thesis of the authors of this book is that the principle of voluntary exchanges of goods and services, *i.e.,* "freedom of contract," should be freely permitted in order to increase economic efficiency by maximizing value and minimizing the costs of the exchange.

We hold that the *Samson* case does not dictate a result favorable to the appellants. The first assignment of error is overruled.

In their second assignment of er-

ror the appellants state that the trial court committed prejudicial error by construing the defendants' contract in their favor instead of against them.

The central issue in this case is whether paragraph "D" placed the risk of a burglary loss in excess of $250 with Metropolitan. We think that paragraph "D" is clear on this issue. The second assignment of error is overruled.

In their third assignment of error the appellants contend:

"The trial court committed prejudicial error when it granted defendants' motion for summary judgment when plaintiffs had uncontradicted evidence that defendants had acted willfully and/or wantonly. Even assuming, *arguendo,* that the exculpatory clause is valid, plaintiffs are, nonetheless, entitled to maintain the suit and recover on the basis of defendants' willful and/or wanton acts."

The defendants' evidentiary materials negated the existence of willful or wanton acts alleged in plaintiffs' complaint.

Metropolitan's security officer, Steven Gronski, testified in his deposition that there was gross negligence on the part of the defendants; however, it is clear from the deposition that Gronski equated gross negligence with mere failure of the alarm system to properly function.

We think that the appellants' third assignment of error as stated should be overruled; however, we view the $250 liability issue to be a material fact in dispute. The third assignment of error is sustained on this issue.

In their last assignment of error the appellants assert error in the court's failure to grant their motion for summary judgment. It is overruled for the reasons given above.

The judgment of the trial court is reversed and remanded for a determination of the defendants' liability, if any, up to $250.

*Judgment reversed and cause remanded with instructions.*

BROGAN, P.J., and KERNS, J., concur.