## CLARK

v.

## OHIO BUREAU OF WORKERS' COMPENSATION.

 2002-Ohio-3522.]

Court of Claims of Ohio.

No. 2000–12271.

Decided June 12, 2002.

Perry R. Silverman, for plaintiff.

Betty D. Montgomery, Attorney General, and Peggy W. Corn, Assistant Attorney General, for defendant.

---

J. WARREN BETTIS, Judge.

{¶ 1} On December 15, 1998, plaintiff Jeffrey L. Clark suffered bodily injury as a result of a motor vehicle collision caused by Melissa Darding ("Darding"). At the time of the accident, plaintiff was acting within the course and scope of his employment while operating a container truck for Smith's Roll–Off Service. Plaintiff filed for and received workers' compensation benefits and presented a claim for automobile insurance payments from Darding's policy provider, Nationwide Insurance Company ("Nationwide") and from his employer's underinsured motorist policy provider, Motorists Mutual Insurance Company ("Motorists"). Nationwide paid plaintiff $478,842. When Motorists agreed to settle plaintiff's claim for $770,000, defendant, Bureau of Workers' Compensation ("BWC"), asserted its subrogation rights, pursuant to R.C. 4123.931. Motorists entered into a separate settlement agreement with BWC on December 7, 1999, and paid $155,000 to BWC. The remainder of the $770,000 was paid by Motorists to plaintiff.

{¶ 2} Plaintiff brought this action against defendant on November 24, 2000, seeking to recover the sum of $155,000 plus interest. Plaintiff claims that he was unlawfully deprived of these funds by defendant when defendant exercised subrogation rights under statutory provisions which recently were declared unconstitutional by the Supreme Court of Ohio in *Holeton v. Crouse* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111. Plaintiff maintains that defendant was unjustly enriched by taking a portion of his civil settlement and that defendant forced plaintiff unlawfully to waive his right to retain benefits. Defendant argues that

the money was paid pursuant to a valid settlement agreement between BWC and Motorists. Defendant asserts that the agreement was a contract between the parties and that the rights of the parties under the contract vested prior to invalidation of the subrogation provisions. Plaintiff asks this court to apply the decision in *Holeton* retrospectively and, thus, to void the settlement agreement between BWC and Motorists. The parties agreed to submit this case on briefs and joint stipulations of fact.

{¶ 3} Most of the arguments raised by plaintiff in his complaint were addressed by the Supreme Court of Ohio in *Holeton,* supra. The court ruled that, in general, statutory provisions enabling a workers' compensation program to subrogate against a tortfeasor exist in nearly every state. While the act of subrogation may reduce the total amount of recovery that a worker receives from the tortfeasor, it does not alter or reduce the sum of workers' compensation benefits received by the claimant:

{¶ 4} "[T]he claimant is always left with the full measure of compensation and benefits to which he or she is entitled under the Workers' Compensation Act. Thus, R.C. 4123.931 does not disrupt any of the rights or obligations of the claimant and the employer with regard to the payment of statutory workers' compensation benefits, and the balance of compromise upon which the viability of the workers' compensation system depends remains intact." *Holeton,* supra, at 120–121, 748 N.E.2d 1111.

{¶ 5} The Supreme Court also noted that the subrogation principle was justified inasmuch as the BWC recovered monies payable to the claimant that were duplicative of the bureau's outlay for medical payments and wage-loss reimbursement. The court stated in *Holeton,* "it is constitutionally permissible for the state to prevent a tort victim from recovering twice for the same item of loss or type of damage, once from the collateral source and again from the tortfeasor." *Holeton,* supra, at 121–122, 748 N.E.2d 1111. In the instant case, plaintiff has received over $290,000 in benefit payments from BWC and he continues to remain eligible for future payments concerning the injuries that he suffered in 1998.

{¶ 6} Plaintiff maintains that once the statutory provisions were declared unconstitutional, the state's rights to subrogation were barred. Plaintiff posits that because the statute was rendered void, the state did not have the right to subrogate ab initio. "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 80, 25 OBR 125, 495 N.E.2d 380, citing *Norton v. Shelby Cty.* (1886), 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178.

Accord *Ex Parte Siebold* (1879), 100 U.S. 371, 376, 25 L.Ed. 717; *Chicago I. & L. Ry. Co. v. Hackett* (1913), 228 U.S. 559, 566, 33 S.Ct. 581, 57 L.Ed. 966.

{¶ 7} Plaintiff insists that this court must rule that the decision in *Holeton* be applied retrospectively. Thus, the sole issue before the court is whether defendant has a legal right to retain funds obtained pursuant to statutory provisions that have been subsequently declared unconstitutional. In *Ohio Bur. of Workers' Comp. v. Mullins* (2000), 140 Ohio App.3d 375, 378, 747 N.E.2d 856, the Tenth District Court of Appeals provided the following explanation of this issue:

{¶ 8} "Unlike statutory enactments, judicial pronouncements of the law generally apply retrospectively. *State v. Akers* (Sept. 9, 1999), Lawrence App. No. 98CA33, unreported, 1999 WL 731066; see, also, *Shockey v. Our Lady of Mercy* (Jun. 25, 1997), Hamilton App. No. C–960492, unreported, 1997 WL 346104. The effect of a court decision is not to make new law but only to hold that the law always meant what the court says it now means." *Akers*, supra.

{¶ 9} In *Wendell v. AmeriTrust Co.* (1994), 69 Ohio St.3d 74, 630 N.E.2d 368, the Supreme Court of Ohio addressed one of the exceptions to the retrospective application of decisions declaring a statute unconstitutional and explained as follows:

{¶ 10} "In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467, we held that, generally, a decision of this court overruling a previous decision is to be applied retrospectively with an exception for contractual or vested rights that have arisen under the previous decision. This reasoning applies with similar force when the court's decision strikes down a statute as unconstitutional."

{¶ 11} Since contracts are formed in contemplation of and reliance upon the law in effect at the time that the contract is finalized, courts generally will not disturb the operation of such an agreement despite the fact that the contract was founded upon an unconstitutional act. See *Royal Indemn. Co. v. Baker Protective Serv., Inc.* (1986), 33 Ohio App.3d 184, 186, 515 N.E.2d 5.

{¶ 12} "The rule that retrospective operation should not be given to a change in judicial opinions respecting the constitutional validity of legislative enactments can be invoked only to avoid the impairment of the obligation of contracts which have been entered into pursuant to statutory provisions and in reliance upon former adjudications respecting their validity." *Lewis v. Symmes* (1900), 61 Ohio St. 471, 56 N.E. 194, at syllabus.

{¶ 13} The United States Supreme Court considered the effect of invalidating acts committed pursuant to an unconstitutional statute in *Chicot Cty. Drainage Dist. v. Baxter State Bank* (1940), 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329.

{¶ 14} "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton v. Shelby County,* 118 U.S., 425, 442 [6 S.Ct. 1121, 30 L.Ed. 178]; *Chicago, I. & L. Ry. Co. v. Hackett,* 228 U.S., 559, 566 [33 S.Ct. 581, 57 L.Ed. 966]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects — with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination."

■ {¶ 15} In this case, the court finds that defendant's contractual rights vested once the settlement agreement was executed and BWC received payment from Motorists in December 1999. This court concludes that, based upon review of the evidence and the within case law, it should not apply *Holeton* retroactively in this case because the rights and obligations of the parties and other interested persons were determined at the time the settlement was completed. This court will neither nullify such agreement nor order a reallocation of the monies at issue. For the foregoing reasons, judgment is rendered in favor of defendant.

Judgment for defendant.

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.