OPINION *Page 2 
{¶ 1} Defendant-Appellant, Jack Fadley d.b.a. Tracy's Country Market, appeals the decision of the Upper Sandusky Municipal Court granting judgment in the amount of $7,667.12 plus interest and costs in favor of Plaintiff-Appellee, Pepsi-Cola General Bottlers (hereinafter "Pepsi"). On appeal, Fadley asserts that the trial court erred as a matter of law and abused its discretion when it found that a contract between him and Pepsi was not unconscionable, and when it declined to limit the judgment to $2,500. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} On September 22, 2006, Pepsi filed a complaint against Fadley asserting that the parties entered into an contract on or about March 25, 2002; that Fadley owed Pepsi $7,667.12 for goods and services sold and delivered between September 7, 2005, and December 6, 2005; that Fadley agreed to personally guarantee the debts of the entity doing business as Tracy's Country Market; and, that Fadley refused to pay this amount. Pepsi requested judgment in the amount of $7,667.12, with interest at eighteen percent from March 2, 2006, and costs.
 {¶ 3} In May 2008, the case proceeded to bench trial, at which the following testimony was heard.
 {¶ 4} Fadley testified that from January 2002 until January 2005, he operated a carry-out business called Tracy's Country Market (hereinafter "the *Page 3 
market"), which his ex-wife, Tracy, managed; that, in March 2002, he decided to set up a credit account with Pepsi for convenience purposes so that deliveries could be made even when he was not there to pay with cash or check; that he met with a Pepsi sales representative and entered into a credit contract with Pepsi, which contained statements that "Personal guaranty required if instant credit is required or if applicant is a private corporation" and "Applicant agrees to notify the credit department by certified mail of any changes in ownership and agrees to be liable for all purchases should undersigned fail to comply with said notification" (trial tr., pp. 33, 36); that he "glanced over" the information in the contract, but did not read it closely, even though he had the opportunity to do so (trial tr., p. 34); that the sales representative did not force or pressure him to sign the contract; and, that the credit contract was not essential to his business.
 {¶ 5} Fadley continued that, in January 2005, he sold the market to his sister, Rebecca Larick, who purchased the market through her limited liability company, Sycamore Marathon and Beck's Deli, and continued to do business as Tracy's Country Market; that he had a zero balance with Pepsi at the time he sold the market to Larick; that he did not send anything in writing to Pepsi by certified mail notifying it of the change in ownership until after Pepsi initiated the lawsuit; that, in May 2006, after gaining notice of the lawsuit against him and the unpaid account, he sent a letter informing Pepsi that he had transferred the business and *Page 4 
stating that he did not believe he owed the debt because it was incurred by Larick after the transfer.
 {¶ 6} Jeffrey Bruns testified that he is a Pepsi sales manager for the area; that credit applications are optional for customers doing business with Pepsi; that the credit contract with Fadley contains a provision requiring the applicant to provide notice of a change of ownership to Pepsi by certified mail; that Pepsi requires this provision because businesses often change hands quickly, and, if not notified of such a change, Pepsi would not have an opportunity to evaluate the credit of the new owner; that he had no knowledge and did not receive certified mail notifying him of a change of ownership from Fadley to a new owner; that the sales representative of the market's Pepsi account, Jennifer Kramer, would have advised him of the change in ownership if she had knowledge of it; that he never received a credit application for the market from Larick or Sycamore Marathon and Beck's Deli, LLC; that, in September 2005, the market's Pepsi account became delinquent; that Fadley's credit limit for the market was $2,500, which was established by the Pepsi credit department after the contract was signed and approved; and, that the market's Pepsi account went well over this limit at some point, which happens occasionally with credit accounts.
 {¶ 7} Jennifer Kramer testified that she is an account sales manager for Pepsi; that she travels to the locations in her sales area and receives orders from *Page 5 
business customers; that she was familiar with Tracy, Fadley's ex-wife and the market manager, and often spoke to her when she took the market's orders; that Tracy never informed her of an ownership change of the market; that eventually she met Larick, who informed her that she was running the business during the Fadleys' divorce; that Larick told her that, if she decided to purchase the market, she would notify her; that Larick never notified her that she purchased the market; and, that she was never aware of an ownership change of the market.
 {¶ 8} Larick testified that she purchased the market from her brother, Fadley, in January 2005; that she obtained a new vendor's license for the market; that, in the first week she took over, she met with Kramer and introduced herself as the new owner; that her "Sycamore Marathon and Beck's Deli, LLC, doing business as Tracy's Country Market" vendor's license and various other licenses and certificates issued to "Sycamore Marathon" were hanging in plain view above the desk where she sat down with Kramer to place orders, but that she never directed Kramer's attention to them; that she made Pepsi purchases for several months as the new owner, and did not realize that she was using Fadley's credit account; that she never completed a Pepsi credit application for the market; and, that, on several occasions, she used "Sycamore Marathon" business checks to pay the Pepsi account for the market. *Page 6 
 {¶ 9} Thereafter, the trial court granted judgment in Pepsi's favor in the amount of $7,622.12, plus eighteen percent interest[1] from March 2, 2006, and costs, stating, in part, that:
 The evidence demonstrates that Fadley requested a line of credit from Plaintiff for the benefit of his business and for his personal convenience in running the same. It was not a business necessity on his part and Plaintiff did not require it as a condition of doing business. The credit agreement is a two page document. The terms are neither lengthy nor complex. The print, while small, is legible. The requirement that Fadley notify Plaintiff of a change in ownership is a reasonable condition and not burdensome to Fadley. The agreement is not unconscionable.
 As to the defense that adequate notice was communicated to Plaintiff and that it knew (or should have known), of the change in ownership, it is not reasonable to expect a large corporate organization to know or be charged with all knowledge which an employee may have obtained, however informally.
(May 2008 Judgment Entry, pp. 1-2).
 {¶ 10} It is from this judgment that Fadley appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO FIND THE PEPSI CONTRACT UNCONSCIONABLE WITH RESPECT TO APPELLANT. *Page 7 
 Assignment of Error No. II THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY NOT LIMITING JUDGMENT TO THE SUM OF $2,500.00, THE CREDIT LIMIT ESTABLISHED BY APPELLANT AND APPELLEE.
 Assignment of Error No. I {¶ 11} In his first assignment of error, Fadley argues that the trial court erred as a matter of law and abused its discretion when it found that the credit contract between him and Pepsi was not unconscionable. Specifically, Fadley contends that the provisions of the contract requiring his personal guaranty of credit purchases and certified written notice of a change of ownership were unreasonably favorable to Pepsi. Further, Fadley contends that Pepsi had actual knowledge of the change in ownership. We disagree.
 {¶ 12} Initially, we note that, although Fadley asserts that the trial court "abused its discretion," a trial court's determination of whether a written contract is unconscionable is a question of law. Taylor Bldg.Corp. of Am. v. Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 35. Accordingly, as appellate courts review questions of law de novo, our review of the trial court's determination of conscionability will be de novo. Id., citing Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1996), 73 Ohio St.3d 107. *Page 8 
 {¶ 13} "Ohio courts have held the concept of `freedom of contract' to be fundamental to our society." Royal Indem. Co. v. Baker ProtectiveServices, Inc. (1986), 33 Ohio App.3d 184, 186. However, this notion may be outweighed by overwhelming public policy concerns, such as contract unconscionability. Id. "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." Collins v. Click Camera Video (1993), 86 Ohio App.3d 826, 834. Thus, for a contract provision to be unconscionable, both substantive and procedural unconscionability must be present. Id. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." Taylor, 2008-Ohio-938, at ¶ 34.
 {¶ 14} Substantive unconscionability is present when the contract terms are unfair and unreasonable. Id.; see, also, True Light ChristianMinistries Church v. Clear Channel Outdoor, Inc., 157 Ohio App.3d 198,2004-Ohio-2539, ¶ 28. Although no list of generally considered factors has been developed as indicating substantive unconscionability, courts have considered the following: "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." ClickCamera, 86 Ohio App.3d at 834. Procedural unconscionability is present when no voluntary *Page 9 
meeting of the minds took place between the parties to the contract. Id. Procedural unconscionability focuses on the circumstances of the parties' bargaining power, including factors such as the parties' "`age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" Id., quoting Johnson v. Mobil OilCorp. (E.D.Mich. 1976), 415 F.Supp. 264, 268.
 {¶ 15} Here, evidence was presented that Fadley set up the Pepsi credit account for his convenience when he was not at the store to pay using cash or check; that the credit account was not essential to his business and was not required in order to do business with Pepsi; that he was not forced or pressured to sign the contract; and, that he had the opportunity to thoroughly read the contract, even though he did not choose to do so. Further, evidence was presented that the terms in question were included in the contract to ensure that Pepsi received notice of a change of ownership so that it would have an opportunity to evaluate the credit of the new owner. Additionally, we find, as the trial court found, that an examination of the contract reveals it to be a short, two-page document with fairly simple terms. Finally, we agree with the trial court that the notification requirement was a reasonable condition and was not burdensome to Fadley. *Page 10 
Consequently, we agree with the trial court that the contract was not unconscionable.
 {¶ 16} Additionally, Fadley contends that Pepsi had actual notice of the change of ownership, which makes enforcement of the contract unconscionable. Fadley points to Larick's testimony that she introduced herself as the market's "new owner" to Kramer, Pepsi's account sales manager, and that certificates and licenses issued to "Sycamore Marathon" hung above the desk where she placed orders with Kramer. However, Kramer testified that Larick never informed her that she was the market's new owner and that she was never aware of any ownership change. We agree with the trial court that, particularly given the express requirements of the contract, it is unreasonable to impute actual knowledge to a large corporate organization based on informal knowledge that its employee may or may not have acquired.
 {¶ 17} Accordingly, we overrule Fadley's first assignment of error.
 Assignment of Error No. II {¶ 18} In his second assignment of error, Fadley argues that the trial court erred as a matter of law and abused its discretion by not limiting judgment to $2,500, the credit limit of the market's Pepsi account. Specifically, Fadley contends that the contract reflects that a $2,500 credit limit was established; that his responsibility for the debt should be limited to this credit limit because he did *Page 11 
not benefit from any additional extension of credit; and, because testimony was presented that it was unusual for a small account, like the market's, to be permitted to exceed the credit limit. We disagree, as the contract terms provide otherwise.
 {¶ 19} Here, as previously discussed, the contract provides that "[applicant agrees to notify the credit department by certified mail of any changes in ownership and agrees to be liable for all purchases should undersigned fail to comply with said notification" (emphasis added). Additionally, the "personal guaranty" portion of the contract provides that Tracy's Country Market contracts and guarantees to Pepsi "the faithful payment, when due, of any and all duties and obligations and the payment of any and all indebtedness, damages, costs, and expenses due to [Pepsi] of [the market] for purchases made by [the market]" (emphasis added). Finally, testimony established that the credit limit of $2,500 was set by the Pepsi credit department after the contract was signed by Fadley and approved; thus, Fadley cannot claim that he intended to limit his contractual liability to $2,500. Consequently, we find that, because the contract binds Fadley for "any and all indebtedness," and because the $2,500 credit limit was not established until after Fadley signed the contract, the trial court was not required to limit its judgment to $2,500.
 {¶ 20} Accordingly, we overrule Fadley's second assignment of error. *Page 12 
 {¶ 21} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur.
[1] We note that this rate of interest was established by the terms of the credit contract and was not disputed by the parties. *Page 1